Laura L. Ho (CA SBN 173179)
lho@gbdhlegal.com
Beth Holtzman (CA SBN 316400)
bholtzman@gbdhlegal.com
GOLDSTEIN, BORGEN, DARDARIAN & HO
300 Lakeside Drive, Suite 1000
Oakland, CA 94612
Tel:  (510) 763-9800
Fax:  (510) 835-1417

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIMITRI DIXON, individually, and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>CUSHMAN & WAKEFIELD, INC.,<br><br>    Defendant. | Case No.<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>  1. **Violations of the Fair Labor Standards Act**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Dimitri Dixon ("Plaintiff"), individually and on behalf of all others similarly situated, alleges as follows:

## INTRODUCTION

1. Plaintiff Dimitri Dixon brings this action individually, and in a representative capacity on behalf of all other similarly situated individuals ("Collective Action Members"), against Defendant Cushman and Wakefield, Inc. (hereinafter "C&W") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.

2. Plaintiff began working for Defendant as an appraiser in 2007 – thirteen (13) years preceding the filing of this action. She and other Appraisers throughout the country (including Trainees, Appraisers, and Senior Appraisers) have been denied the benefits and protections required by the FLSA.

3. Plaintiff alleges that Defendant **failed to**:

    a.    Properly classify Appraisers as non-exempt under the FLSA;

    b.    Pay Plaintiff and Collective Action Members all overtime wages for hours worked in excess of forty (40) hours a week.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

5. This Court also has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

6. Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because Defendant is a joint employer with its wholly owned subsidiary Cushman and Wakefield Western, Inc. (which Plaintiff has sued in Case No. 3:18-cv-05813-JSC), which has a registered address with the California Secretary of State (425 Market Street, Suite 2300, San Francisco, CA 94105). Together, they employ Collective Action Members within this district. C&W also owns related entities in states across the country that, along with C&W, also employ Appraisers like Plaintiff Dixon and Collective Action Members throughout the country.

## PARTIES

7. Plaintiff Dimitri Dixon is an adult individual who resides in Tustin, CA. She brings this action individually and on behalf of all others similarly situated in the United States. Plaintiff was employed as an Appraiser Trainee[1] by C&W and worked in that capacity from September 2007 to December 10, 2018.

8. Defendant is a commercial real estate services company. Upon information and belief, C&W offers investment and asset management, project and development, and valuation and advisory services, among other services. C&W is the parent corporation of C&W Western, Inc, and related corporate entities in states across the country and together they also employ Appraisers like Plaintiff. Upon information and belief, these entities have offices throughout the country, including in Georgia, New York, Ohio, Illinois, Washington D.C., and Washington state, as well as non-U.S. offices in locations such as London and Singapore.

## FACTUAL ALLEGATIONS

9. Defendant controls the internal affairs and daily operations of its affiliates, including C&W Western. Defendant sets guidelines and procedures for generating appraisals and provides Defendant's software for generating appraisals. *Dixon v. Cushman & Wakefield Western, Inc*, Case No. 3:18-cv-05813-JSC, ECF No. 69 at 8; ECF No. 48 at 9; ECF No. 51 Ex. 20. Appraisers nation-wide are subject to the same company policy misclassifying appraisers as exempt from overtime. *Dixon v. Cushman & Wakefield Western, Inc.,* Case No. 3:18-cv-05813-JSC, ECF No. 69 at 9; *Seltz v. Cushman & Wakefield, Inc*., No. 1:18-cv-02092-BAH (D.C.C. Nov. 25, 2019) (ECF No. 32).

10. Upon information and belief, all compensation plans and promissory notes show that Defendant is in control of appraisers' rate and method of payment. *Dixon v. Cushman & Wakefield Western, Inc*., Case No. 3:18-cv-05813-JSC, ECF No. 69 at 8; ECF No. 51, Exs. 10, 16, 21, 28; ECF No. 66, Exs. 1, 2, 3. Defendant has set templates for the different compensation plans. ECF No. 69 at 8. Any changes to promissory notes and recoverable draws needed to be approved by Defendant. ECF No. 69 at 8.

---

[1] Ms. Dixon's official job title was "Associate Director," though she is referred to and identified as an "Appraiser Trainee" at all relevant times.

11. Wage statements for appraisers at Defendant's subsidiaries, including in California, Washington, Ohio, and Georgia, list Defendant's New York address and follow a nearly uniform format. *Dixon v. Cushman & Wakefield Western, Inc.*, Case No. 3:18-cv-05813-JSC, ECF No. 57-1; ECF No. 69 at 8.

12. Appraisers nationwide used Defendant's online resources and computer programs to generate appraisal reports and were required to follow guidelines and procedures set forth by Defendant. *Dixon v. Cushman & Wakefield Western, Inc.*, Case No. 3:18-cv-05813-JSC, ECF No. 69 at 8; ECF No.48 at 9; ECF No. 51 Ex. 20. Across subsidiaries, Defendant controlled employees' work conditions.

13. Upon information and belief, Defendant's Executive Management team are also Executives for Defendant's subsidiaries. *Dixon v. Cushman & Wakefield Western, Inc.*, Case No. 3:18-cv-05813-JSC, ECF No. 54 at 2. Plaintiff was an employee of C&W, a commercial real estate services company. Plaintiff began working as an Appraiser Trainee on September 17, 2007. As an Appraiser Trainee, Plaintiff's duties included appraising the value of real estate investments, researching property sales, listings, and rentals, helping gather information for the constructing of financial models, researching financial information, preparing appraisals for firm clients, and inspecting property.

14. Plaintiff worked across several practice areas within C&W 's Valuation Advisory Group, and began working as an Appraiser Trainee in the Senior Housing practice area, supervised by Ryan McCafferty. Upon information and belief, around June 2013, Plaintiff transferred to the Auto Specialty practice area, supervised by Chris Kelsey. Plaintiff most recently worked within C&W's Auto Specialty practice area.

15. Throughout her tenure at C&W, Plaintiff actively sought a state-certified appraisal license. Plaintiff held an Appraiser Trainee license. Plaintiff's licensure status affected the number of C&W projects that she could complete.

16. Plaintiff was compensated through a "recoverable draw" scheme. Beginning in 2017, Plaintiff was required to sign a standard promissory note with C&W Western, where she agreed to pay C&W Western the balance of a fixed sum of money equal to her annual compensation. Plaintiff's

promissory notes are nearly identical to promissory notes for appraisers nation-wide. *Dixon v. Cushman & Wakefield Western, Inc.*, Case No. 3:18-cv-05813-JSC, ECF No. 63 at 8. Each employee then receives a bi-monthly draw against this obligation, which is the sole basis of compensation. Such "draw" payments constitute advancements to Plaintiff, which Plaintiff owes to C&W in the form of debt. The promissory note allows C&W, among other things, to recoup the entire balance of the advanced sum at any time, including after the employee-employer relationship terminates.

17. Plaintiff's wage statements listed Defendant's New York address. *Dixon v. Cushman & Wakefield Western, Inc.*, Case No. 3:18-cv-05813-JSC, ECF No. 69 at 8.

18. Appraisers work on assigned projects that generate "fees."[2] Such "fees" are intended, in part, to cover their bi-monthly draw payments and satisfy outstanding debt obligations. Employees earn "fees" through a complicated arrangement, which is stipulated in their employment contracts. A portion of the "fees" generated by employees – including Plaintiff – are set aside for Defendant, to account for and offset various accrued expenses and costs, including referral fees, supervisory offsets and other miscellaneous costs. Upon information and belief, beginning around June 2013, "fees" earned by Plaintiff for completed projects were significantly reduced due to "supervisory offsets."

19. Upon information and belief, C&W calculates the total "fee" amount generated by appraisers (minus any deductions made pursuant to the employment contract), as well as the total amount of draw payments made that period; the draw payments are then deducted from the "fees" collected. Any positive amount is paid to the employee. Any negative amount is carried forward as debt owed to C&W, which must be settled by appraisers.

20. Plaintiff's employment contract states that she may not receive less than the draw payments. The employment contract further states that the draw payments "are loans to be repaid to C&W upon demand." The employment contract states that if an appraiser's "fee" share does not sufficiently reimburse C&W for their advanced draw payments, employees are personally liable to C&W.

---

[2] Defendant uses the term "fees." Plaintiff disputes that she and other appraisers are compensated by "fees" for FLSA purposes. *See Vivar v. Benjamin's Behavioral Health Servs.*, Case No. H-18-3060, 2019 U.S. Dist. LEXIS 213979, at *7 (S.D. Tex. Dec. 11, 2019) (FLSA distinguishes between fee basis payments and commissions).

21. Plaintiff has consistently carried forward a deficit while working for C&W. Plaintiff worked on C&W projects with the goal of settling mounting deficits resulting from the combined draw payments and promissory note obligations.

22. In 2017, C&W held a promissory note against Plaintiff for $54,000, which was equal to the total bi-monthly draw payments received throughout the year.

23. Plaintiff repeatedly alerted her supervisors that her deficit was beginning to grow and that the "fee" split with her supervisor precluded Plaintiff from settling the outstanding debt obligations. Plaintiff made two suggestions as ways to settle her obligations: (1) C&W should increase her "fee" share and/or (2) she should be given additional projects to earn more "fees." Upon information and belief, as of December 2017, Plaintiff was only receiving fifty (50) percent of the total "fees" generated, and otherwise continued receiving fewer and fewer projects.

24. Upon information and belief, around December 2017, after Plaintiff discussed her decreasing project volume with Lars Platt, a regional leader at C&W, Mr. Platt informed Plaintiff that there simply was not enough business to accommodate Plaintiff's request.

25. Upon information and belief, around December 2017, Michele Kauffman, a C&W area leader, and another one of Plaintiff's supervisors, told Plaintiff that she should continue to work on obtaining her appraiser license as a way to position herself for more projects at C&W.

26. On May 16, 2018, Plaintiff received an email stating that, effective June 4, 2018, Plaintiff's recoverable draw compensation would be reduced from $54,000 to $45,760, as Plaintiff had not performed enough work to settle the deficit owed to Defendants.

27. After a period of receiving few opportunities to conduct appraisals in late 2017 and early 2018, Plaintiff was told that she owed more than $28,000 to C&W and that Plaintiff needed to figure out a way to reduce that figure.

28. Upon information and belief, on or around May 17, 2018, Plaintiff discussed with Ms. Kauffman the low number of projects she was assigned and her growing draw deficit. Ms. Kauffman told Plaintiff that C&W did not have work that she could perform, explaining that only a handful of low-level assignments – with correspondingly lower "fees" – were available. Additionally, Ms.

Kauffman informed Plaintiff that such low-value assignments were not projects that C&W, as a firm, typically took on.

29. Plaintiff's draw payments were stopped effective June 4, 2018.

30. Plaintiff's resulting stress, growing deficit, and feeling of helplessness caused Plaintiff severe anxiety, chest pains, and depression. Because of these symptoms, Plaintiff took medical leave.

31. On April 15, 2019, Plaintiff was notified of her termination from C&W, effective December 10, 2018. Defendant alleged that Plaintiff owed a draw balance of $15,632.54 and demanded repayment. Defendant's subsidiaries, including C&W Western, use uniform termination and collection letters. *Dixon v. Cushman & Wakefield Western, Inc*., Case No. 3:18-cv-05813-JSC, ECF No.63 at 8.

32. During the applicable time period, Plaintiff and Collective Action Members regularly and consistently worked more than eight (8) hours in a workday and/or more than forty (40) hours in a workweek. Nonetheless, Defendant failed to pay Plaintiff and Collective Action Members for all hours worked in excess of eight (8) hours in a workday and/or in excess of forty (40) hours in a workweek. *Dixon v. Cushman & Wakefield Western, Inc*., Case No. 3:18-cv-05813-JSC, ECF No. 49, 50, 52, 64;

33. Defendant misclassified Plaintiff and Collective Action Members as "exempt" employees.

## COLLECTIVE ACTION ALLEGATIONS

34. Plaintiff, on behalf of herself and all Collective Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

35. Pursuant to 29 U.S.C. § 216, Plaintiffs seek to prosecute the FLSA claims as a collective action on behalf of:

> All persons employed by Cushman & Wakefield, Inc. as Appraisers or Senior Appraisers from July 24, 2016 to the close of the opt-in period, who were not paid an hourly wage, or a guaranteed wage free and clear that did not fluctuate due to the quantity or quality of work.

("Collective Action Members").

36. There are numerous similarly situated current and former Appraisers throughout the United States who would benefit from the issuance of a Court-supervised notice. Those similarly situated employees are known to C&W and are readily identifiable through C&W's records.

37. Plaintiff and other Collective Action Members are similarly situated because, among other things, they all: (a) had the same duties; (b) performed the same tasks; (c) were misclassified as exempt from overtime wages; (d) were paid under the same employment contracts and promissory notes; (e) were required, suffered, or permitted to work, and did work in excess of forty hours per week; and (f) were not paid at a rate of one and one-half times their regular rate of pay for all overtime hours worked.

38. As part of its regular business practice, C&W intentionally, willfully, and repeatedly engaged in a uniform pattern, practice, and/or policy of violating the FLSA with respect to the Collective Action Members. This policy and pattern or practice included, but is not limited to, willfully: misclassifying Appraisers as exempt from overtime wages; failing to pay Appraisers overtime wages for hours that they worked in excess of forty hours per workweek; and failing to record all of the time that Appraisers worked for the benefit of C&W.

39. C&W was aware or should have been aware that federal law requires it to pay employees an overtime premium for hours worked in excess of forty hours per workweek.

40. C&W's deceptive conduct prevented Plaintiff and all other Collective Action Members from discovering or asserting their claims earlier than they did because C&W, among other things, repeatedly declared that Appraisers were exempt from overtime.

**FIRST CAUSE OF ACTION**
**Violations of the Fair Labor Standards Act**
**[29 U.S.C. §§ 201 *et seq.*]**

41. Plaintiff, on behalf of herself and all Collective Action Members, re-alleges and incorporates by reference the allegations contained in the foregoing paragraphs as if fully set forth herein.

42. C&W has been, and continues to be, an employer engaged in interstate commerce within the meaning of the FLSA.

43. C&W employed and/or continues to employ Plaintiffs and each of the Collective Action Members within the meaning of the FLSA.

44. C&W has had annual gross revenues in excess of $500,000.

45. Plaintiff expressly consents in writing to be a party to these collective actions pursuant to 29 U.S.C. § 216(b). Plaintiff's written consent to join was previously filed with the Court.

46. C&W has a policy and practice of failing to pay Appraisers and Senior Appraisers, including Plaintiff and Collective Action Members, an hourly wage, or a guaranteed wage free and clear that did not fluctuate due to the quantity or quality of work, and thereby misclassifies them.as exempt from overtime wages

47. C&W has a policy and practice of refusing to pay any overtime compensation to Appraisers and Senior Appraisers for hours worked in excess of forty hours per week.

48. C&W has violated and continues to violate the FLSA, including §§ 207(a)(1) and 215(a) because C&W willfully fails to compensate Appraisers and Senior Appraisers, who are not paid an hourly wage, or a guaranteed wage free and clear that did not fluctuate due to the quantity or quality of work, for all hours worked and at a rate not less than one and one-half times their regular rate of pay for work performed in excess of forty hours in a workweek.

49. As a result of C&W's misclassification of the above-described Appraisers and Senior Appraisers and its attendant failure to record, report, credit, and/or compensate Plaintiff and Collective Action Members, C&W has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine the wages, hours, and other conditions and practices of employment in violation of the FLSA, including §§ 211(c) and 215(a).

50. C&W's conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of the statute, 29 U.S.C. § 255(a).

51. Due to C&W's FLSA violations, Plaintiff, on behalf of herself and all Collective Action Members, are entitled to recover from C&W unpaid wages, as well as overtime compensation, an additional amount equal to the unpaid wages and overtime as liquidated damages, reasonable attorneys' fees, and costs pursuant to § 216(b) of the FLSA, as well as further relief as described below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class Members, respectfully requests this Court to grant relief against Defendant as follows:

A. Designate this action as a collective action on behalf of the Collective Action Members and authorize issuance of notice pursuant to 29 U.S.C. § 216(b) to all Collective Action Members, apprising them of the pendency of this action and permitting them to timely assert FLSA claims in this action by filing individual consents to opt into this proceeding;

B. Declare that Defendant misclassified all Collective Action Members under the FLSA as exempt from overtime wages;

C. Award liquidated damages to Plaintiffs and Collective Action Members as a result of C&W's willful failure to pay for all wages due as well as overtime compensation pursuant to the FLSA;

D. Award pre-judgment and post-judgment interest;

E. Award costs and expenses of this action;

F. Award reasonable attorneys' fees; and

G. Award such other relief as this Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on each and every cause of action so triable.

Dated: October 7, 2020

Respectfully submitted,

GOLDSTEIN, BORGEN, DARDARIAN & HO

*/s/ Laura L. Ho*
Laura L. Ho

Attorneys for Plaintiff

# ATTACHMENT

# **CONSENT FORM AND DECLARATION**

1. I consent, agree, and opt in to be a party plaintiff in the above-captioned collective action lawsuit against Cushman & Wakefield, Inc. in order to seek redress for alleged violations of the Fair Labor Standards Act, pursuant to 29 U.S.C. § 216(b). I acknowledge and confirm that I was an employee of Cushman & Wakefield, Inc., and/or one of its subsidiaries at some point from July 24, 2016 to present. Since July 24, 2016 there were occasions when I worked over 40 hours per week for Cushman & Wakefield, Inc. and did not receive all overtime compensation due.

2. I understand that by filing this consent, I will be bound by any adjudication of this action by a court, whether it is favorable or unfavorable.

Date: 10/7/2020  _____



Signature

Dimitri Dixon
_____
Printed Name

Information below this line will be redacted before filing with the Court.

**REDACTED**